USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/11/2019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
:
DYNAMIC DATA TECHNOLOGIES, LLC, :
:
Plaintiff, :
:
-against- : 1:18-cv-10180-GHW
:
HTC CORPORATION and HTC AMERICA, : MEMORANDUM OPINION
INC., : AND ORDER
:
Defendants. :
------------------------------------------------------------ X

GREGORY H. WOODS, United States District Judge:

## I.   INTRODUCTION

Defendants HTC Corporation and HTC America, Inc. seek to transfer this patent infringement case to the District Court for the Western District of Washington pursuant to 28 U.S.C. § 1404. Plaintiff Dynamic Data Technologies, LLC argues against this transfer. For the reasons set forth below, Defendants' motion to transfer is GRANTED.

## II.   BACKGROUND[1]

   a.   *Dynamic Data Technologies and HTC*

Plaintiff Dynamic Data Technologies, LLC ("DDT" or "Plaintiff") is a Delaware limited liability company with its principal place of business in St. Paul, Minnesota. Dkt. No. 37, Ex. A, Declaration of Curt Holbreich ("Holbreich Decl.") at 1. DDT's patents that are at issue in this case derive from the research and development efforts of Koninklijke Philips N.V. ("Philips"). *Id.* Philips began manufacturing carbon-filament lamps in the Netherlands in 1891. *Id.* at ¶ 5. In recent

---

[1] Unless otherwise noted, the facts are taken from the amended complaint, and are accepted as true for the purposes of this motion. *See Cerussi v. Union Coll.*, 144 F. Supp. 2d 265, 266 (S.D.N.Y. 2001) (accepting as true facts alleged by plaintiff or otherwise undisputed in deciding motion to transfer). Moreover, "[i]n deciding a motion to transfer, a court may consider material outside of the pleadings." *Mohsen v. Morgan Stanley & Co. Inc.*, No. 11-cv-6751 (PGG), 2013 WL 5312525, at *3 (S.D.N.Y. Sept. 23, 2013) (collecting cases).

years, it has developed technologies for the encoding and decoding of video and audio content as well as image and video processing technology. *Id.* at ¶ 8. DDT acquired patent nos. 8,135,073; 6,714,257; 8,073,054; 6,744,918; 8,184,689; 6,996,177; 7,010,039; 8,311,112; 6,646,688; 7,894,529; and 7,571,450 from Philips. *Id.* at ¶¶ 12, 18. DDT is the owner of these patents by assignment. *Id.* In broad strokes, these patents involve methods and systems for the processing, filtering, encoding, and decoding of images and videos. *See id.* at ¶¶ 30, 32, 41, 42, 48, 58, 59, 67, 76, 84, 92, 99, 104.

HTC Corp., Inc. ("HTC Corp.") is a Taiwanese corporation that is incorporated under the laws of Taiwan. Dkt. No. 34 at ¶ 20; Declaration of Philip Wilging ("Wilging Decl.") ¶¶ 3,6. Its principal place of business is in New Taipei City, Taiwan. HTC America, Inc. ("HTC America") is a wholly-owned subsidiary of HTC Corp. *Id.* HTC America's principal place of business is located in Seattle, Washington. HTC Corp. and HTC America (collectively "HTC") manufacture consumer electronics such as smartphones and virtual reality devices. In this suit, DDT alleges that HTC is infringing the patents in suit by using their video and image processing technology in their smartphones and virtual reality devices. Dkt No. 37 at 8; *see also* Dkt. No. 34 at ¶¶ 47-518.

    b. *Procedural History*

On November 1, 2018, DDT filed a complaint (the "Complaint") in this Court against HTC, asserting eleven counts of patent infringement pursuant to 35 U.S.C. §§ 271(a)-(b). Dkt. No. 1 at 25-65. On March 22, 2019, HTC filed a motion to transfer this case to the United States District Court for the Western District of Washington (the "Western District") pursuant to § 1404. Dkt. No. 37 (the "Motion to Transfer"). DDT filed its opposition on April 5, 2019, Dkt. No. 45 (the "Opposition"), and HTC filed its reply on April 12, 2019, Dkt. No. 46, (the "Reply").

   III. **LEGAL STANDARD**

Section 1404(a) allows a district court to transfer a case for the convenience of parties and witnesses to "any other district or division where it might have been brought" if doing so is "in the

interest of justice." *See* 28 U.S.C. § 1404(a). The Court evaluates a potential transfer pursuant to § 1404(a) in two steps. First, the Court must ask whether the case might have been brought in the proposed transferee district. *See Herbert Ltd. P'ship v. Elec. Arts Inc.*, 325 F. Supp. 2d 282, 285 (S.D.N.Y. 2004). An action "might have been brought" in the proposed transferee district if venue, personal jurisdiction, and subject matter jurisdiction would have been proper in the transferee court at the time of filing. *City of Pontiac Gen. Employees Ret. Sys. v. Dell Inc.*, No. 14-CV-3644 (VSB), 2015 WL 12659925, at *2 (S.D.N.Y. Apr. 30, 2015).

If the threshold inquiry is satisfied, the Court proceeds to the second step of the analysis and determines whether a transfer is appropriate. *See id.* Here, the Court considers the following factors to determine whether to grant the requested transfer:

> (1) the convenience of the witnesses; (2) the convenience of the parties; (3) the location of relevant documents and the relative ease of access to sources of proof; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice.

*Multiwave Sensor Inc. v. Sunsight Instruments, LLC*, No. 1:16-CV-1361-GHW, 2017 WL 1498058, at *6 (S.D.N.Y. Apr. 26, 2017). The list of factors is not exhaustive. *Pausch Med. GmbH v. Pausch LLC*, No. 14-CV-1945 PAC, 2015 WL 783365, at *1 (S.D.N.Y. Feb. 24, 2015). "There is no rigid formula for balancing these factors." *Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 561 (S.D.N.Y. 2000). And "[t]he Court . . . has broad discretion in making determinations of convenience under Section 1404(a) and notions of convenience and fairness are considered on a case-by-case basis." *Sentegra, LLC v. ASUS Computer Int'l*, 15-cv-3768-GHW, 2016 WL 3093988, at *2 (S.D.N.Y. June 1, 2016); *see also D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006) (explaining that district courts have broad discretion in deciding, on a case-by-case basis, whether to transfer the venue of a given litigation based on "notions of convenience and fairness."). Put differently,

"weighing the balance is essentially an equitable task left to the Court's discretion." *Citigroup Inc.*, 97 F. Supp. 2d at 561 (internal citation and quotation marks omitted). The movant bears the burden of establishing, by clear and convincing evidence, that transfer is warranted. *See, e.g.*, *New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 114 (2d Cir. 2010); *Fireman's Fund Ins. Co. v. Pers. Commc'ns Devices, LLC*, No. 09-CV-1349 (SHS), 2009 WL 10666098, at *2 (S.D.N.Y. July 9, 2009). In a patent infringement action, "[o]perative facts . . . include facts relating to the design, development, and production of a patented product." *Sentegra, LLC*, 2016 WL 3093988, at *5.

## IV. DISCUSSION

The parties do not dispute that this action might have been brought in the Western District. *See* Opposition at 9, n.4. The Court therefore focuses its analysis on the nine factors that a court must weigh when determining whether to transfer a case pursuant to § 1404.

### a. The Convenience of Witnesses

"Courts typically regard the convenience of witnesses as the most important factor in considering a § 1404(a) motion to transfer." *Sentegra, LLC*, 2016 WL 3093988, at *2. In conducting this analysis, the Court "weighs more heavily the convenience of non-party witnesses than party witnesses." *McGraw-Hill Companies Inc. v. Jones*, No. 12-CV-7085 AJN, 2014 WL 988607, at *7 (S.D.N.Y. Mar. 12, 2014). The party moving for transfer "must provide the Court with a detailed list of probable witnesses who will be inconvenienced if required to testify in the current forum." *Kiss My Face Corp. v. Bunting*, No. 02-CIV-2645, 2003 WL 22244587, at *2 (S.D.N.Y. Sept. 30, 2003). The Court "does not merely tally the number of witnesses who reside in the current forum in comparison to the number located in the proposed transferee forum," but rather "must qualitatively evaluate the materiality of the testimony that the witnesses may provide." *Herbert*, 325 F. Supp. 2d at 286.

HTC has identified three witnesses who are located in the Western District and work at

HTC America's headquarters in Seattle. These witnesses are Ryan Hoopingarner, Associate Vice President, Marketing, Slane Hardin, Associate Vice President, Sales, and Vinay Narayan, Associate Vice President, Products and Operations. Wilging Decl. at ¶ 12. According to HTC, Mr. Hoopingarner is responsible for deciding the content for HTC user guides and other information consumers receive about the accused products. *Id.* Mr. Hardin is charged with overseeing the sales of the accused products in the United States. *Id.* Finally, Mr. Narayan is knowledgeable about the accused products' functionality and features. *Id.* HTC represents that "[t]hese witnesses have substantial information regarding one or more expected subjects pertaining to the accused HTC cellphones and VIVE virtual reality products that are likely to support HTC's claims and defenses or be relevant to DDT's allegations." Motion to Transfer at 15.

Other potential witnesses with knowledge of the operative facts, which include the design, development, and production of the allegedly-infringing products, are located neither in this District nor the Western District. As HTC explains, "[t]o the extent there are any relevant HTC witnesses involved in engineering or design work for . . . the accused HTC smartphone and VIVE products[,] those employees are likely to be employed by HTC Corp. and located in Taiwan." Motion to Transfer at 11. HTC argues that these Taiwan-based, potential witnesses would find the Western District to be a more convenient forum than this District for two reasons. First, HTC argues that the travel distance and time difference between Taiwan and the Western District is less significant than that between Taiwan and this District. *Id.* at 11-12. Second, HTC argues that any witnesses based in Taiwan would be able to testify in the case with a less dramatic disruption to their regular duties if the Court transfers this case to the Western District because HTC America has fully-staffed offices in Washington. *Id.* at 12. The Court assigns meaningful weight to HTC's argument that transferring this case to the Western District would be substantially more convenient for its potential witnesses.

For its part, DDT argues that this District is a more convenient forum for third party witnesses with information relevant to the patents. DDT identifies three categories of third-party witnesses: (i) individuals with background knowledge of the patents; (ii) the inventors of the patents; and (iii) patent pool employees and employees of Verizon and AT&T. First, DDT argues that there are at least six "witnesses with personal knowledge of the conception, reduction-to-practice, prosecution, and acquisition of the patents-in-suit . . . within this District" as a result of the fact that the prosecution of the patents-in-suit occurred here. Opposition at 4. DDT identifies six attorneys who worked on the prosecution of the patents-in-suit, five of whom appear to reside in this District. *Id.* at 4; Dkt. No. 47, Reply Declaration of Curt Holbreich ("Holbreich Reply Decl."), Ex. J.

Nevertheless, DDT does not explain the anticipated testimony of the attorneys who allegedly participated in the patent prosecutions. Instead, DDT merely asserts that these individuals possess "personal knowledge of the conception, reduction-to-practice, prosecution, and acquisition of the patents-in-suit." Opposition at 4. Because DDT fails to provide any description of the anticipated testimony beyond the general categories of information that these witnesses may possess, the Court cannot discern if any of these witnesses would provide material testimony. *See Dickerson v. Novartis Corp.*, 315 F.R.D. 18, 28 (S.D.N.Y. 2016); *Pace v. Quintilla*, No. 13-cv-91 (RJS), 2013 WL 5405563, at *3 (S.D.N.Y. Sept. 23, 2013) (Because "[p]laintiffs have not discussed the potential testimony of the [anticipated witnesses] . . . there is no basis on which the Court may infer the materiality of their testimony.").

Second, DDT argues that this District is more favorable for 16 inventors of the patents-in-suit who are based in Europe because it "would be more convenient" for them to travel to New York than to Seattle. Opposition at 16. However, the Court "gives little, if any, weight" to the convenience of these witnesses because they reside in neither the transferor nor transferee forum.

6

*Sentegra, LLC*, 2016 WL 3093988, at *4 (internal citation and quotation marks omitted). Furthermore, decisions by judges in this District have routinely refused to assign any weight to the purported "convenience" of a New York forum for witnesses traveling from Europe. *See, e.g.*, *Pergo, Inc. v. Alloc, Inc.*, 262 F. Supp. 2d 122, 130 (S.D.N.Y. 2003) (argument that New York "provides a convenient hub for witnesses traveling from Europe" is "simply not [a] relevant factor[ ] to consider in weighing the convenience to the parties"); *see also Bionx Implants, Inc. v. Biomet, Inc.*, No. 99-cv-740 (WHP), 1999 WL 342306, at *3 (S.D.N.Y. May 27, 1999) (Indiana forum would be no more inconvenient than a New York forum for witnesses residing in Finland because they "are already inconvenienced by having to travel thousands of miles from their homes to testify."). Therefore, the Court assigns this factor little weight in the transfer analysis here.

Finally, DDT contends that patent pool employees as well as employees at Verizon and AT&T are non-party witnesses "likely [to] have relevant information" to this case. Opposition at 8. With respect to the patent pool employees, DDT fails to identify a single individual at any of these companies that would testify about patent pool licensing or speak more broadly about the patent infringement issues in this case. Accordingly, the Court declines to assign meaningful weight to these anonymous witnesses in the transfer analysis. *See Intria Corp. v. Intira Corp.*, No. 00 CIV. 7198 (AGS), 2000 WL 1745043, at *3 (S.D.N.Y. Nov. 27, 2000) ("Courts do not consider the convenience of such unspecified, unnamed witnesses in the transfer analysis.").

DDT then argues that AT&T and Verizon facilities in this District employ "numerous executives and engineers potentially involved with the development, design, compliance, enablement, and certification" of the allegedly-infringing HTC products. Opposition at 8-9. As with the patent pool employees, DDT fails to identify any Verizon employees who would testify in this matter. *See* Opposition at 7-9, 22. Accordingly, the Court declines to assign meaningful weight to these unspecified Verizon employees in its transfer analysis. *See Intria Corp.*, 2000 WL 1745043, at

7

\*3. DDT's potential witnesses from AT&T fare no better. Although DDT identifies two AT&T employees by name, it fails to describe the anticipated testimony of these individuals. The Court, therefore, will not factor the convenience of these potential witnesses into the transfer analysis. *See Dickerson*, 315 F.R.D. at 28; *Quintilla*, 2013 WL 5405563, at \*3. Accordingly, the Court declines to assign meaningful weight to the convenience of the patent pool, Verizon, or AT&T employees in its analysis. After weighing the totality of the aforementioned factors, the Court concludes that the convenience of the witnesses weighs in favor of transferring this case to the Western District.

### b. The Convenience of the Parties

The convenience of the parties favors transfer when transfer would increase convenience to the moving party without generally increasing the inconvenience to the non-movant. *See Liberty Mut. Ins. Co. v. Fairbanks Co.*, 17 F. Supp. 3d 385, 399 (S.D.N.Y. 2014). This factor favors transfer when the transferee forum is the movant's principal place of business and the non-movant is located outside of both the transferor and transferee forums. *Id.* Here, transferring this case to the Western District would increase convenience for HTC without increasing the inconvenience to DDT. HTC America's principal place of business is in Seattle, which is in the Western District. HTC America's witnesses reside there, and, as explained above, it would be less disruptive for any HTC Corp. witnesses traveling from Taiwan to travel to Seattle because they would have access to and be able to work from HTC America's offices. Motion to Transfer at 12-13; Wilging Decl. ¶¶ 6-9, 15-17. The Court assigns significant weight to the fact that HTC America's principal place of business is in the transferee district.

In contrast, DDT is located in St. Paul, Minnesota and will be required to travel whether the case proceeds in this District or in the Western District. As a result, DDT will not suffer an inconvenience irrespective of whether the case is transferred or not. *See, e.g., Sentegra, LLC*, 2016 WL 3093988, at \*4 (finding that transferring the case to the district where the defendant had its

8

principal place of business would increase defendant's convenience without causing the plaintiff to suffer inconvenience because it was located outside of both the transferor and transferee forums); *see also Tole v. Glenn Miller Prod., Inc.*, No. 12. Civ. 6660 (NRB), 2013 WL 4006134, at *3 (S.D.N.Y. Aug. 6, 2013) (finding party convenience factor in favor of transfer to defendant's principal place of business where non-forum plaintiff "must travel a substantial distance regardless of whether transfer is granted.").

DDT's counterarguments are unavailing. DDT first claims that transferring this case to the Western District would result in inconvenience because it would require the company to retain new local counsel. This factor is accorded little weight. Decisions by judges in this District have considered a party's requirement to obtain new counsel as a result of transfer to be a factor militating against transfer; however, even so, these decisions have weighed the inconvenience against the increased convenience that the transfer would confer on the movant. *See, e.g.*, *Gendreau v. Kigawa*, No. 13-CV-3217 LTS DCF, 2014 WL 6487426, at *12 (S.D.N.Y. Nov. 14, 2014); *Mark I Mktg. Corp. v. R.R. Donnelley & Sons Co.*, No. 91 CIV. 7665 (MBM), 1992 WL 358777, at *4 (S.D.N.Y. Nov. 30, 1992). Here, as in *Mark I Mktg. Corp.*, DDT does not explain why its current counsel could not be admitted *pro hac vice*, thereby "sparing [P]laintiff[] the expense of retaining and acculturating new counsel." 1992 WL 358777, at *4. Furthermore, this case is still nascent: the Court has not held an initial pretrial conference and no discovery has taken place. As such, the Court does not conclude that transferring the case to the Western District would "generally increas[e] the inconvenience" to DDT even if the transfer would require Plaintiff to retain new counsel. *Cf. Gendreau*, 2014 WL 6487426, at *12 (concluding that the "cost to [p]laintiffs of having to obtain new counsel is a consideration that . . . appears to weigh against transfer" where plaintiffs had retained counsel over a year and a half before motion to transfer and the parties had entered a discovery order). The Court does not conclude, therefore, that DDT's *potential* obligation to retain new counsel as a result of the

9

transfer "generally increas[es] the inconvenience" to DDT so as to weigh against transferring the case. *Liberty Mut. Ins. Co.*, 17 F. Supp. 3d at 399.

Next, DDT argues that HTC's litigation history undermines its claim that it would be more convenient to transfer this case to the Western District. DDT points to HTC's prior consent to arbitrate patent licensing disputes in this District, Opposition, Ex. 19 at 19, and HTC's filing suit in the District Court for the District of Delaware, *see HTC Corp. v. Apple Inc.*, 1:11-cv-785 (D. Del. Sept. 7, 2011). This argument is unavailing. DDT offers no authority for the proposition that the Court should consider HTC's litigation history in this District and another district court on the east coast in determining whether it is convenient for HTC to litigate *this case* in this District. Motions to transfer "are determined upon notions of convenience and fairness on a case-by-case basis." *In re Cuyahoga Equip Corp.*, 980 F.2d 110, 117 (2d Cir. 1992); *accord Jones v. Weibrecht*, 901 F.2d 17, 19 (2d Cir. 1990). Accordingly, the Court declines to ascribe meaningful weight to HTC's litigation history in deciding the instant motion. *See City of Pontiac Gen. Employees Ret. Sys.*, 2015 WL 12659925, at *2 (declining to consider defendant's litigation history because motions to transfer "are determined upon notions of convenience and fairness on a case-by-case basis."). On balance, therefore, the convenience of the parties weighs strongly in favor of transfer.

        c. <u>The Location of Relevant Documents and the Relative Ease of Access to Sources of Proof</u>

"The location of relevant documents is largely a neutral factor in today's world of faxing, scanning, and emailing documents." *Am. S.S. Owners Mut. Prot. and Indem. Ass'n v. Lafarge N. Am.*, 474 F. Supp. 2d. 474, 484 (S.D.N.Y. 2007); *see also McGraw-Hill Companies Inc. v. Jones*, 2014 WL 988607, at *9 (S.D.N.Y. Mar. 12, 2014). However, "it is improper to ignore [it] entirely." *In re Link_A_Media Devices Corp.*, 662 F.3d 1221, 1224 (Fed. Cir. 2011). "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place

where the defendant's documents are kept weigh in favor of transfer to that location." *Millennium, L.P. v. Hyland Software, Inc.*, No. 03-cv-3900 (DC), 2003 WL 22928644, at *4 (S.D.N.Y. Dec. 10, 2003).

Here, the Court must consider the location of the documents that both HTC Corp. and HTC America possess. HTC represents that HTC America's records are primarily maintained within the Western District, that HTC Corp.'s records are primarily maintained in Taiwan, and that neither entity maintains any records in this District. Motion to Transfer at 14; Wilging Decl. at ¶¶ 14-15. Because the majority of HTC America's records are stored in the Western District, HTC argues that this factor weighs in favor of transfer. Motion to Transfer at 14 (citing *Sentegra, LLC*, 2016 WL 3093988, at *5) ("Because the bulk of relevant evidence appears likely to be stored at [defendant's] headquarters, the Court finds that this factor weighs slightly in favor of transfer.").

Because HTC Corp. primarily maintains its records in Taiwan, it will have to electronically send or physically transport the documents that it possesses regardless of whether this case is litigated in this District or the Western District. HTC represents that the burden on HTC Corp. would be lessened if it is required to send these documents to a district that houses HTC America, its subsidiary. Motion to Transfer at 14. The Court recognizes that it is easier for companies to ship documents to a satellite office and for a company's employees to work out of a satellite office. The Court concludes that this factor weighs in favor of transfer because the entirety of HTC America's documents and records are located in the Western District and because HTC America's headquarters are in the Western District, which serves as a satellite office for HTC Corp. *See Sentegra, LLC*, 2016 WL 3093988, at *5.

d. The Locus of Operative Facts

"The location of operative facts is a primary factor in determining a § 1404(a) motion to transfer." *Rosen v. Ritz-Carlton Hotel Co. LLC*, No. 14-CV-1385 RJS, 2015 WL 64736, at *4 (S.D.N.Y. Jan. 5, 2015) (quoting *Whitehaus Collection v. Barclay Prod., Ltd.*, No. 11-civ-217, 2011 WL 4036097, at *2 (S.D.N.Y. Aug. 29, 2011)). In the context of patent infringement cases, courts have held that "the transferee forum is the locus of operative facts if the design, development, and some of the marketing of the product allegedly infringing plaintiff's patent occurred in the transferee forum and the designers, developers, and marketers live and work in that forum." *Millennium v. Dakota*, No. 03 CIV. 1838 RWS, 2003 WL 22940488, at *7 (S.D.N.Y. Dec. 15, 2003). In this case, the accused products are designed and manufactured in Taiwan. Motion to Transfer at 15. Nevertheless, HTC argues that the Western District is the locus of a number of operative facts because "HTC markets, sells, and imports the accused products based on activity in its Seattle office." *Id.* With respect to the counts of indirect infringement, DDT alleges that HTC induced customers of the accused products to infringe through its "user manuals, product support, marketing materials, and training materials." Dkt. No. 34 at ¶ 172. As described above, HTC has identified employees in HTC America's office in Seattle with knowledge of the mediums that DDT alleges that HTC used to induce customers to infringe the patents-in-suit. Specifically, Mr. Hoopingarner is knowledgeable about the user manuals and HTC's website content for the U.S. market. Wilging Decl. at ¶ 12. Mr. Narayan is knowledgeable about customer service and importation of the accused products. *Id.* Finally, Mr. Hardin is knowledgeable about sales of the accused products. *Id.* Accordingly, this factor weighs heavily in favor of transfer.

e. Availability of Process to Compel the Attendance of an Unwilling Witness

"[I]f neither party asserts that a witness will be unwilling to testify voluntarily, the availability of process to compel testimony is irrelevant to the transfer analysis." *Rosen*, 2015 WL 64736, at * 4.

Neither HTC nor DDT asserts that a witness would be unwilling to testify in either forum. Accordingly, this factor is neutral.

### f. The Relative Means of the Parties

"Where disparity exists between the parties, such as an individual plaintiff suing a large corporation, the relative means of the parties may be considered." *Coast to Coast Fabrics, Inc. v. Exact Change Only Corp.*, No. 04-cv-7300 (DAB), 2006 WL 846716, at *5 (S.D.N.Y. Mar. 29, 2006) (alterations omitted) (quoting *Berman v. Informix Corp.*, 30 F. Supp. 2d 653, 659 (S.D.N.Y. 1998)). HTC argues that this factor is neutral because the parties are both corporate entities. DDT contends that this factor weighs against transfer because HTC is valued at nearly $600 million, while DDT "is a much smaller company with a single employee [and without] offices or operations in Washington." Opposition at 24. In light of "the large disparity between the parties' relative means," DDT argues that the Court should not transfer the case and force DDT to litigate "in a far less convenient forum." *Id.* "A party arguing against or for transfer because of inadequate means must offer documentation to show that transfer (or the lack thereof) would be unduly burdensome to [its] finances." *MasterCard Int'l, Inc. v. Lexcel Solutions, Inc.*, No. 03–CV–7157 (WHP), 2004 WL 1368299, (S.D.N.Y. June 16, 2004) (internal citation and quotation marks omitted). Here, DDT has failed to provide documentation suggesting that transfer would be "unduly burdensome" on their finances. The Court, therefore, finds this factor to be neutral. *See Sentegra, LLC*, 2016 WL 3093988, at *6; *see also Rosen*, 2015 WL 64736, at *4.

### g. The Forum's Familiarity with the Governing Law

"Familiarity with the governing law as a factor in determining transfer of venue is generally given little weight in federal courts." *Multiwave Sensor Inc.*, 2017 WL 1498058, at *8. The parties agree that this factor is neutral in the transfer analysis. Because "any district court may handle a patent case with equal skill," the Court finds this factor to be neutral. *Smart Skins LLC v. Microsoft*

13

*Corp.*, No. 14-cv-10149 (CM), 2015 WL 1499843, at *11 (S.D.N.Y. Mar. 27, 2015) (internal quotation marks and citation omitted).

### h. The Weight Accorded the Plaintiff's Choice of Forum

"A plaintiff's choice of forum is entitled to considerable weight and is generally not disturbed unless the balance of the factors strongly favors transfer." *McGraw-Hill*, 2014 WL 988607, at *7. Where "the forum selected is not plaintiff's home forum or the place where the operative facts of the action occurred," however, "this diminishes the weight assigned to this factor." *Id.*; *see also Multiwave*, 2017 WL 1498058, at *8 (the operative facts of this case "have few meaningful connections to the plaintiff's chosen forum," and thus "the importance of the plaintiff's choice . . . measurably diminishes.") (internal citation and quotation marks omitted); *Hix v. Morgan Stanley & Co. LLC*, No. 15-cv-217 (LTS) (JCF), 2015 WL 1726548, at *2 (S.D.N.Y. Apr. 15, 2015) ("[A] plaintiff's choice of forum is given less deference when it is not her home district."); *Simpson v. Rodas*, No. 10-cv-6670 (CS), 2012 WL 4354832, at *10 (S.D.N.Y. Sept. 21, 2012) (importance of plaintiff's choice "measurably diminishes" where operative facts "have few meaningful connections" to plaintiff's chosen forum).

DDT is not a resident in this District—it is a Delaware corporation that is based in St. Paul, Minnesota. Holbreich Decl. Ex. A, C, D. DDT points to a number of considerations to argue that this case has meaningful connections to this District. *See* Opposition at 15-16. While the Court considers these factors, they are entitled to less weight because this District is not DDT's home forum. *McGraw-Hill*, 2014 WL 988607, at *7. Accordingly, DDT's choice of forum is entitled to little deference and limited weight in the Court's analysis. *See, e.g.*, *Multiwave Sensor Inc.*, 2017 WL 1498058, at *8; *Fuji Photo Film Co.*, 415 F. Supp. 2d at 376.

### i. Trial Efficiency and the Interests of Justice

"The Court's consideration of whether transfer is in the interest of justice is based on the totality of the circumstances, and relates primarily to issues of judicial economy[.]" *Indian Harbor Ins. Co. v. Factory Mut. Ins. Co.*, 419 F. Supp. 2d 395, 407 (S.D.N.Y. 2005) (internal quotation marks and citations omitted). Docket conditions and calendar congestion are proper factors to be accorded some weight in this analysis. *Id.* Furthermore, "[w]hen a case is in its earliest stages, it is generally not inefficient to transfer the case." *Starr Indem. & Liab. Co. v. Brightstar Corp.*, 324 F. Supp. 3d 421, 441 (S.D.N.Y. 2018).

HTC argues that both docket conditions and trial efficiency weigh in favor of transfer. The data that HTC cites regarding the Western District substantiates its claim. *See* Holbreich Decl., Ex. H at 11, 17. Furthermore, this case is in its in initial stages and—as explained above—the Western District is more convenient for HTC's witnesses and for the production of documents relevant to this case. The Court therefore concludes that this factor weighs in favor of transfer.

### j. Balancing of the Interests Favors Transfer

After weighing the factors set forth above, the Court concludes that HTC has met its burden of demonstrating by clear and convincing evidence that transfer is appropriate. Of the nine factors that the Court considered, only one—the plaintiff's choice of forum—weighed in DDT's favor and against transfer. Even then, DDT's choice of forum is accorded little weight as this District is not its home forum. The Court concludes that transferring this case to the Western District would serve the interests of judicial economy and increase convenience to HTC and a number of its identified witnesses without materially increasing the inconvenience to DDT or any of its witnesses.

### V. CONCLUSION

For the reasons set forth above, HTC's motion to transfer venue to the U.S. District Court for the Western District of Washington is GRANTED. The Clerk of Court is directed to terminate

the motion pending at Dkt. No. 36 and to transfer this case to the Western District of Washington.

    SO ORDERED.

Dated: June 9, 2019
       New York, New York

_____
GREGORY H. WOODS
United States District Judge